# Industrial Trust, Title & Saving Co. v. Weakley.

## Action on Bank Check.

1. *Bank check, when payable.*—The drawing of a check upon a bank presupposes a deposit by the drawer thereof of a sum in the bank sufficient to pay such check; and it is payable immediately upon presentation and demand.

2. *Same; must be presented within a reasonable time.*—A check drawn upon a bank, being payable immediately upon demand, the holder thereof must present it for payment within a resonable time, and what is a reasonable time will depend upon the circumstances of each particular case; but if the bank on which the check is drawn is in the same place where the payee receives it, it should be presented for payment within banking hours on the day it is received, or on the following day.

3. *Same; failure to present check within a reasonable time.*—Where the payee of a check fails to present it for payment within a reasonable time, he must suffer by the loss which arises from such failure, if the drawer had funds on deposit sufficient to pay said check; but where the drawer had no funds in the bank, or subsequently withdraws them, he suffers no loss or damage from the holder's delay or failure to present said check or give notice of the non-payment thereof, for, in such case, he is liable without presentment and notice.

4. *Same; when drawer has only a portion of the money in bank.* When the drawer of a check has in bank only a portion of the money necessary to pay it, he is liable thereon, notwithstanding an unreasonable delay in the presentation of said check and the failure of the payee to give him notice of its dishonor, unless at the time of drawing said check, the drawer had the right to draw it in the belief or expectation, by reason of an arrangement with the bank, that he would have funds sufficient to pay the check at the time of its presentation, or that his overdraft would be paid.

5. *When check is taken in payment instead of money, the delay in pre senting it is at the peril of the party receiving the check.*—When, in the collection of a debt, the agent for the collection thereof takes a check, instead of money, a delay in the presentment of said check for any length of time, beyond which, with proper and reasonable diligence it could have been presented, is at the peril of the party thus retaining the check and postponing presentment.

6. *Same; when drawer of check is not responsible for its non-payment.*

Vol. 103.

[Industrial Trust, Title & Saving Co. v. Weakley.]

Where, in an action against the drawer of a check, it is shown that at the time of drawing the check the bank was indebted to the defendant for services and on unpaid checks in his possession to an amount which, with his balance on deposit, was more than the amount for which the check was drawn, and that before drawing the said check the defendant arranged with the cashier of the bank to be allowed to over-draw his account, and that when the check was delivered by the drawer he directed the person receiving it to go to the bank, which was across the street, and get his money, but that instead of doing this, the payee in said check endorsed it to the plaintiffs, in payment of whose debt it was given, and sent it to them in a distant city, and that several days thereafter the bank suspended, before the said check was presented for payment, the defendant is not liable in such suit.

7. *Same; damage sustained by defendant from failure to make due presentment of check.*—In such suit the damage sustained by defendant, by reason of the failure of the payee to make due presentment of said check for payment, was not the amount of defendant's balance on deposit at the time the check was drawn, but was for the full amount of said check; absolving him from all liability thereon.

APPEAL from the District Court of Lauderdale.

Tried before the Hon. W. P. CHITWOOD.

This suit was brought on December 10, 1891, by the appellant, the Industrial Trust, Title & Savings Company, against the appellee, John B. Weakley, Jr., and counted upon a check, which had been drawn by the defendant on the Florence National Bank, in favor of one W. J. Nelson. The facts of the case are set forth at length in the opinion.

. The plaintiff requested the court to give to the jury the following written charges : (1.) "If the jury believe the evidence, they must find for the plaintiff." (2.) "If the jury believe the evidence, they must find for the plaintiff for $74.36, the difference between the check, and the amount on deposit." (3.) "If the jury believe the evidence, that at the time the check in suit was drawn, the defendant did not have to his credit unchecked against, on the books of the bank, a sufficient amount to cover the same, they must find for the plaintiff." (4.) "I charge the law to be, that a depositor of a bank has no legal right to check against an amount due him for legal or other services, where such amount had never been agreed upon between him and an officer of the bank, and there was no previous agreement as to the amount of the same, and he had never presented his bill to the bank for the same, and such amount had never been placed to his

credit." (5.) "I charge you that the law is, that a depositor of a National Bank has no legal right to overdraw his account, and the bank is under no legal obligation to pay an overdraft." (6.) "If the jury believe from the evidence that on the day the check in suit was given, or the day after, the defendant did not have a sufficient amount to his credit in bank, unchecked against, to cover the same, then the bank was not legally bound to pay said check, even if you find that the bank was indebted to the defendant for services, which indebtedness, or the amount of the same, never had been agreed upon between himself and the bank, and for which he had presented no account, and which had never been placed to his credit, in an amount sufficient, which in addition to his deposit account would have covered the amount of the check in suit." (7.) "I charge the law to be, that a bank is under no legal obligation to pay a check drawn by a depositor, where such depositor has not a sufficient amount to his credit to pay said check, even if you find from the evidence that the bank owed him for legal services enough, which added to his deposit, to cover the check when his account for services had not been presented to the bank or any of its officers, and there was no agreement as to the amount of the same, and it had not been placed to his credit." (8.) "I charge the law to be, that nothing but a deposit account is the subject of check by a depositor of a bank." The court refused to give each of these charges as asked by the plaintiff, and the plaintiff separately excepted to the refusal to give each of them, and also excepted to the court's giving to the jury, at the request of the defendant, the following charge: "If the jury believe the evidence, they must find for the defendant."

There was judgment for the defendant. The plaintiff appeals, and assigns as error the refusal to give the charges asked by it, and the giving of the general affirmative charge, as requested by the defendant.

C. E. JORDAN and NATHAN PARKINS, for appellant.— 1. Nothing but a deposit can be the subject of a check on a bank.—Boone on Banking, §§ 164, 165; 3 Amer. & Eng. Encyc. of Law, 211; Tiedeman on Com. Paper, § 433; Daniel on Neg. Instr., (4th Ed.), §§ 1596, 1597; *Morrison v. Bailey & Burgess*, 64 Amer. Dec. 632; *Morris*

[Industrial Trust, Title & Saving Co. v. Weakley.]

*v. Kennedy*, 33 Amer. Rep. 169 ; *Culver v. Marks*, 17 Amer. St. Rep. 377.

2. Where a depositor has only a portion of the money on deposit, necessary to cover the check, he is bound without demand and notice, as bank is not bound to pay the check.—Boone on Banking, § 179 ; *Matter of Brown*, 2 Story, 502 ; 2 Daniel Neg. Instr., (4th Ed.), § 1597 ; *Eichelberger v. Finley*, 16 Amer. Dec. 312. The drawing of a check on a bank in which the drawer has no funds, or not a sufficient amount to cover the check, is a fraud upon the holder.—2 Daniel Neg. Instr., (4th Ed.), § 1597.

3. A bank is under no legal obligations to pay an overdraft, and the drawer of a check, who is without funds, will be bound, even though the bank would have paid the overdraft had check been presented.—*Morris v. Kennedy*, 33 Amer. Rep. 169 ; *Culver v. Marks*, 17 Amer. St. Rep. 377 ; *Lancaster Bank v. Woodward*, 57 Amer. Dec. 618 ; 2 Daniel on Neg. Instr., (4th Ed.), §§ 1629, 1630; Tiedeman on Com. Paper, § 454. Where drawer has no funds, or not a sufficient amount to pay check, failure to present does not discharge him.—*Morris v. Kennedy*, 33 Amer. Rep. 169 ; *Kinyon v. Stanton*, 28 Amer. Rep. 601 ; *Culver v. Marks*, 17 Amer. St. Rep. 377.

4. Delay in presenting a check for payment is immaterial, unless it injures the drawer. Where the drawer was not in funds, he could not be injured.—2 Dan. Neg. Instr., § 1587 ; Boone on Banking, § 172 ; *Compton v. Gilman*, 42 Amer. Rep. 776 ; *Morris v. Kennedy*, 33 Amer. Rep. 169 ; *Gregg v. George*, 16 Kan. 546; *Mohawk Bank v. Broderick*, 27 Amer. Dec. 192. Drawer is only discharged to the extent injured.—Boone on Banking, § 172; 2 Dan. Neg. Instr., § 1587 ; *Humphries v. Bicknell*, 13 Amer. Dec. 268.

5. A check is not payment, unless drawer was in funds to meet it, or without special agreement that it shall be so received.—*Taylor v. Wilson*, 45 Amer. Dec. 180 ; 2 Dan. Neg. Instr., § 1623.

6. The drawer of a check which the holder does not use due diligence in presenting, is discharged only to the extent of such injury.—Boone on Banking, § 172 ; 2 Dan. Neg. Instr., § 1587 ; *Humphries v. Bicknell*, 13 Amer. Dec. 263.

SIMPSON & JONES and CABANISS & WEAKLEY, *contra*:—

1. A check, unlike a bill of exchange, is generally designed for immediate payment and not for circulation, and, therefore, it becomes the duty of the holder to present it for payment as soon as he reasonably can, and if he does not, he keeps it at his own peril.—*Daniels v. Kyle*, 5 Ga. 245 ; *Merchants Nat. Bank v. Ritzinger*, 118 Ill. 484; Story on Prom. Notes, (7th Ed.) , § 487, Boone on Banking, § 164 ; 3 Amer. & Eng. Encyc. of Law, 211.

2. If a person who receives a check and the bank on which it is drawn are in the same place, the check must be presented the day it is received, or at the latest the day after, and within the usual banking hours.—*Cruger v. Armstrong*, 2 Amer. Dec. 129 ; *Smith v. Miller*, 3 Amer. Rep. 690 ; 1 Waits Ac. & Def., 506, 624 ; *Mohawk Bank v. Broderick*, 27 Amer. Dec. 192, and cases cited in note ; *Smith v. Janes*, 32 Amer. Dec. 528 ; *Himmelmann v. Hotaling*, 6 Amer. Rep. 600 ; Boone on Banking, §§ 172, 173; Story on Promissory Notes, § 493 ; *Cork v. Bacon*, 45 Wis. 192 ; 3 Amer. & Eng. Encyc. of Law, 213 ; *Carroll v. Sweet*, 13 L. R. A. 43; *Merchant's Bank v. Spicer*, 6 Wend. 443; *French v. Bank*, 4 Cranch. 153.

3. If, by reason of the failure of the holder to present the check within the time allowed by law, the drawer is damaged, he is discharged from liability to the holder to the extent of the damage, or he is entirely discharged, if the damage or loss incurred by reason of the failure to present the check and demand payment exceeds or equals the amount of the check.—Story on Prom. Notes, § 497 ; Boone on Banking, § 172 ; 3 Amer. & Eng. Encyc. of Law, 215 ; *Bell v. Alexander*, 21 Gratt. (Va.) 1 ; *Purcell v. Allemong*, 23 Gratt. (Va.) 739 ; *Scott v. Meeker*, 20 Hun. 161 ; *Cox v. Boone*, 8 W. Va. 500; *Stevens v. Park*, 73 Ill. 387.

4. Whether a presentment is made within a reasonable length of time is a question of law for the court, there being no dispute as to the facts.—*Aymar v. Beers*, 17 Amer. Dec. 547 ; *Mohawk Bank v. Broderick*, 27 Amer. Dec. 192 ; *Himmelmann v. Hotaling*, 6 Amer. Rep. 600.

5. When there has not been due presentment and notice, the burden of proof is upon the holder of the check to show that the drawer has sustained no injury.—3 Amer. & Eng. Encyc. of Law, 216 ; *Little v. Phenix Bank*, 2 Hill (N. Y.) 425; *Stevens v. Park*, 73 Ill. 387 ; *Planters Bank v. Merritt*, 7 Heiskell, 177; Story on Prom. Notes, § 497.

HARALSON, J.—1. A bank check is payable immediately on presentation and demand. Its drawing presupposes the deposit of a sum in bank to the credit of the drawer, sufficient to pay it, and amounts to an absolute appropriation by the drawer of that much money, in the hands of his banker, to the holder of the check, to remain on deposit, so appropriated, until called for, and it can not, afterwards, be properly withdrawn.— Tiedeman on Com'l. Paper, § 433; 3 Kent's Com. 104, n.; 2 Daniel on Neg. Instr., § 1597; Morse on Banks & Banking, § 373; *In the Matter of Brown*, 2 Story, C. C. R. 511–518; *Conroy v. Warren*, 3 Johns. Cases 259; *Kinyon v. Stanton*, 28 Amer. Rep. 601.

So strong is this presumption of a check being drawn against an existing deposit, that when one is presented and paid, it has been held, not to be evidence of money lent or advanced by the banker to the customer, but, on the contrary, it is *prima facie* evidence of the repayment to the customer by the banker, to the amount of the check, of money previously deposited by him in the banker's hands.—*Lancaster Bank v. Woodward*, 57 Amer. Dec. 620; *Fletcher v. Manning*, 12 Mee. & W. 571.

2. A check being payable instantly on demand, and on funds, which are represented, by the bare fact of drawing, to be on deposit in bank, with which to pay it in full—and which funds, in the eye of the law, are appropriated by the drawer for that purpose—it follows, as a correct principle of business dealing, that the holder should present it for payment, within a reasonable time, otherwise the delay is at his peril. What is reasonable time will depend upon circumstances; but it is a principle of general recognition, that if the bank on which the check is drawn, be in the same place where the payee receives it, it should be presented for payment within banking hours on the day it is received, or on the following day. If in the meantime, the bank fails, the loss will fall on the drawer.—3 Amer. & Eng. Encyc. of Law, 213 and cases cited; 2 Daniel on Neg. Instr., § 150; 2 Morse on Banks & Banking, § 421; Boone on Banking, § 172; *Taylor v. Wilson*, 11 Metc. 44, s. c. 45 Amer. Dec. 180; *Morrison v. Bailey*, 5 Ohio. St. 13, s. c. 64 Amer. Dec. 632; *Smith v. Janes*, 20 Wend. 192, s. c. 32 Amer. Dec. 528.

3. The payee takes a check with the legal obligation to

present it for payment within reasonable time, and failing so to do, if the drawer has funds on deposit sufficient to pay it, he must suffer all the loss which arises from such failure; but if the drawer has no funds in bank, at the time of drawing the check, or, having them, subsequently withdraws them, he can not be said to suffer any loss or damage from the holder's delay or failure to present or give notice of non-payment. He is liable in such case, without presentment and notice, and may be sued immediately.—2 Daniel on Neg. Instr., § 1590; *Culver v. Marks,* 122 Ind. 554, s. c. 17 Amer. St. Rep. 377; Boone on Banking, §§ 172, 181.

And the drawer is not discharged by the laches of the holder in not making due presentment of the check, or in not giving due notice of its dishonor, unless he has suffered some loss or injury thereby as by the intermediate failure of the bank, and then, only *pro tanto.*—3 Amer. & Eng. Encyc. of Law, 215, and authorities cited; Morse on Bank & Banking, 421 d; 2 Daniel on Neg. Instr., § 1587; Boone on Banking, *supra.*

4.   But, it sometimes happens, as in the case at bar, that the drawer has a portion only of the amount in bank necessary to pay his check, and the question then presents itself, whether the deficiency of his deposit is an excuse for want of presentment and notice. Mr. Daniel says: "We should unhesitatingly say that the drawer of an over-check is bound without demand or notice. A check is intended to be the representative of cash. It is the business of the drawer to know the state of his accounts with the bank, and whether through fraud or carelessness he makes the representation that he has cash to meet it, as he does by the act of drawing it, it would put a premium upon looseness in commercial transactions to permit him to shield himself behind the plea of want of presentment or notice."—2 Daniel on Neg. Instr., § 1597.

The bank, says Judge Story, "is not bound to pay unless it is in full funds; and it is not obliged to pay, or to accept to pay, if it has partial funds only; for it is entitled to the possession of the check on payment; and, indeed, in the ordinary course of business, the only voucher of the bank for any payment is the production and receipt of the check, which the holder can not safely part with, unless he receives full payment, nor the bank

exact, unless under the like circumstances. The holder is not bound to accept part payment, even if the bank is willing to pay in part; for he has a claim to the entirety."—*In the Matter of Brown*, 2 Story's C. C. R. 519; Morse on Banks & Banking, § § 294, 446, 450, 455; *Dana v. Third Nat. Bank*, 13 Allen, 445; *Murray v. Judah*, 6 Cow. 490.

5. Subject to some exception, it is a correct general proposition, that a bank has no right to allow drawers of checks to overdraw their balances, and pay checks out of funds of other depositors, or the money of the stockholders. Overdrawing even to persons of good standing with the bank, does not find sanction in sound usage, except under special conditions.—*Culver v. Marks*, 122 Ind. 554; *Lancaster Bank v. Woodward*, 57 Amer. Dec. 620.

As to overdrafts, Mr. Morse says, there is power in the bank to allow them; that a customer, by negotiating with the authorized and proper officials, may make a legal and binding agreement by which his overdrafts to a certain amount named, and under the circumstances agreed upon, shall be honored; that such a dealing is in the nature of a loan, and is placing money at his disposal or control.—1 Morse on Banks & Banking, § 358.

6. Upon the same subject, Judge Story,—after stating the rule, which seems to be everywhere admitted, that the drawer is liable in all cases for the dishonor of a check, whether it has been duly presented or not, or whether he has had due notice of the dishonor or not, where he has sustained no damage on account of the omission, and after giving his dissent to the proposition, that if the drawer has *any* funds in the hands of the drawee, he is entitled to due presentment and notice of failure to pay,—says, that he understands the true doctrine to be, "that if the drawer has a right to draw, in the belief that he has funds, or in the expectation that he shall have funds at the time of the presentment for acceptance, by reason of arrangements with the drawee, or putting his funds *in transitu*, then, and in such cases, he is entitled to due notice.—*In the Matter of Brown*, *supra*. In this case, the principle seems to be recognized, that when the drawer, from any arrangement he may have made with the bank for him to draw, or where, as between him and the bank, there was

an open account, with a fluctuating or shifting balance between them, and he did not know that he was draw-ing without any right to draw, and had the right to be-lieve his check would be paid, and especially, if the payee had assurances that the check would be paid, then, the drawer would be entitled to due presentment and notice.'' As supporting his view he refers to the cases of *Thackray v. Blackett*, 3 Camp. R. 163; *Orr v. McGinnis*, 7 East. 359, and *Legge v. Thorpe*, 12 East. 171. These expressions of Judge Story find approval with the Virginia Court of Appeals, in the case of *Purcell v. Allemong*, 22 Gratt. 739; Smith's Merc. Law, 237.

7. In the United States, says Mr. Daniel, although it was at one time decided to the contrary in England, an agent, holding a bill or note for collection, would act at his peril in delivering it up on receipt of a check for the amount; and that if the debtor did not pay the amount in money, and the drawer or endorser were not duly notified, they would be discharged, and the loss would fall on the collecting agent.—2 Daniel on Neg. Instr., § 1625; *Whitney v. Esson*, 99 Mass. 308; *Turner v. Bank*, 42 N. Y. 425; *Fifth N. B. v. Ashford*, 123 Pa. St. 212; *Smith v. Miller*, 43 N. Y. 171; *Rathburn v. Steamboat Co.*, 76 N. Y. 376; *Chonteau v. Rowse*, 56 Mo. 65.

In the case of *Smith v. Miller, supra*, the court of ap-peals in New York hold, that when a check is taken in-stead of money by one acting for others, a delay of pre-sentment for a day, or for any time beyond that within which, with proper and reasonable diligence, it can be presented, is at the peril of the party thus retaining the check and postponing presentment. This, says Mr. Daniel, seems to be the correct doctrine, for the agent exceeds authority in taking the check, and therefore acts at his peril.—2 Daniel on Neg. Instr., § 1625; 2 Morse on Bank & Banking, § 421.

8. The evidence in the case before us, is without conflict. One Moore was indebted to the appellant, plain-tiff below, in the sum of $229, due by note, which had been sent by plaintiff to Mr. W. J. Nelson of Florence, Ala., as agent for plaintiff, for collection. John B. Weak-ley, the defendant and appellee, of the same town, was the agent and attorney of said Moore. Said Moore had sent this sum of money to defendant, with which to pay said note. All of Mr. Nelson's transactions for the col-

[Industrial Trust, Title & Saving Co. v. Weakley.]

lection of the note were with the defendant. On the 16th June, 1891, the defendant gave his check, on the Florence National Bank, for $229, payable to the order of W. J. Nelson, "For payment of Moore notes." On the same day, said Nelson endorsed the check—"Pay to the Industrial Trust, Title & Savings Co., of Phila.,"—and sent it to plaintiffs in the mail, and it was forwarded by them, when received, through various banks for collection. The Florence National Bank suspended and closed its doors on the 22d of June, 1891, at about 10 o'clock A. M. On the 23d of June, the check was presented to the defendant, who refused to pay, and it was duly protested.

The plaintiff examined the defendant as a witness, who testified, that he drew and delivered the check about 10 o'clock of the day it bears date, and when he handed it to Mr. Nelson, he asked him to take it to the Florence National Bank and get his money ; that the bank was located in the town of Florence, and he and Nelson both resided there at the time the check was given ; that said bank was located almost opposite to the witness's office across the street ; that at the time of the suspension of said bank, there appeared, by the books of the bank, to his credit, out of moneys deposited by him in the bank, and not drawn out by check, the sum of $154.64; that in addition thereto, the bank was indebted to him at the time, in the sum of $75, for legal services rendered by him to the bank, and was also indebted to him in the sum of $60, due by check drawn in his favor by a depositor of said bank, on the 10th June, 1891 ; that he proved his claims against the bank, after its suspension, before the receiver, and in the account, he charged the bank, with the sum of $154.64, due him on deposit account, with the amount due him for legal services, and the unpaid check for $60 ; and gave it credit for the $229, being for the check given to said Nelson, and $25, which had been paid to him on account of services rendered, and there remained due to him, the sum of $60.64 for which he holds a receiver's certificate, and this sum, besides the other amounts specified, the bank owed him, at the time he gave said check to Nelson ; that at that time, his account with said bank, as stated, was unsettled, and what it owed him for services and for the unpresented check, had not appeared on its books, and a

balance ascertained. About the time of drawing this check, or a short time before, he went to the bank and stated to the cashier, Mr. Tice, that in the course of a few days he would check upon his account rather heavily, and that it might appear overdrawn on the books, but that the bank was indebted to him for services rendered, and that he had some checks on hand against the bank, and he would in a few days, come in and have a settlement, but in the meantime, he desired him to pay his checks, as they were (would be) drawn against the sum the bank owed him, and Mr. Tice consented to do so. He further testified, that from the time the check was delivered to Mr. Nelson, till the suspension of the bank, it was indebted to him in an amount greater than the amount of said check, and that the bank still owes him, after crediting it with the amount of said check, the sum of $60.64.

It thus appears that there was an unsettled account between the defendant and the bank, at the date of the giving of said check ; that the bank, at that time, did owe him an amount greater than a sum sufficient to pay said check ; that he did not draw the same without knowing he had funds in the bank with which to pay it, but had the assurance of the cashier of the bank that his check would be paid, and, therefore, the most reasonable expectation that it would be paid. He acted with commendable caution in reference to the matter, that he might do neither the payee nor the bank any injury, and Mr. Nelson had every reason to believe that the check was good and would be paid, for the defendant did what is not usual when one gives another a check on the bank—requested him to take it to the bank and get his money; and this is just what he ought to have done, and failing, took all the peril of a failure of the bank, before the presentment of the check. Can any one doubt, if Mr. Nelson had gone to the bank, the day he received this check, or the following day, he would have been paid by the bank? He, himself, had every reason to believe it, and had no suspicions, even, to the contrary, for he received a check which acknowledged payment of the notes he had in hand for collection. He must, therefore—and so must his client, the appellant, so far as appellee is concerned—suffer the consequences of a disobedience of defendant's request to present the check, and

his failure to do so till after the bank had failed.   As to when giving a check will operate as a payment of the debt for which it was given, see Boone on Banking, § 181, and authorities cited.

9.   It remains to be considered, what damage did defendant suffer from a failure of the holder, to make due presentment of said check for payment.   He can be shielded from the consequences of the holder's neglect, as we have seen; only to the extent he was damaged.   It is contended, that defendant owes, at least, the difference between what he had in the bank—$154.36—and the amount of the check he gave—$229—which is $74.36. But we are unable to see that defendant was damaged by the failure of the drawee to present his check, only to the extent of $154.36,—the amount to his deposit account at the time.   He had the right, under the circumstances, to draw for the $229.00, and the failure to present the check in time, cancelled it as to him, and made it a payment of the Moore note in full.   We can not divide the $229.   Defendant must be regarded as having paid the whole or no part of it.   The bank got the benefit of it, and owes it to some one, certainly not the defendant, against whom it was properly charged by the receiver in his ascertainment of the balance due by the bank to defendant.

We fail to see that the $74.36 has any thing to do with the case, or that there was any *pro tanto* or other damage to defendant, less than the whole amount of the check, growing out of the holder's failure to present it.

The charges requested by plaintiff, as applicable to the evidence, were properly refused, and the general charge in favor of the defendant was properly given.

Affirmed.